Electronically Submitted
9/1/2023 1:49 PM
Gregg County District Clerk
By: Debbie Kinney, deputy

CAUSE NO. **2023-1512-B**

| | | |
|---|---|---|
| SHUNDA "RENAY" EVERETT PLAINTIFF, | § § § § | IN THE DISTRICT COURT |
| V. | § § | OF GREGG COUNTY, TEXAS |
| TARGET STORES, INC. DEFENDANT. | § § § § | 124TH _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

**Preliminary Statement**

1.  This is a retaliation, hostile work environment, race and gender employment discrimination lawsuit brought to secure relief within the Texas Commission on Human Rights Act ("TCHRA"), as amended, Texas Labor Code § 21.001 et seq., and the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e as amended, and 42 U.S.C. § 1981 ("Section 1981"), as amended.

**Parties**

2.  During all times mentioned in this petition, Shunda Renay Everett, ("Everett" or "Plaintiff") is a Black female who was subjected to adverse action.

3.  During all times mentioned in the petition, Target Stores, Inc. ("Target" or "Defendant") is a Minnesota corporation. It was and is still an employer as defined by Title VII, Section 1981 and TCHRA. Defendant has more than 501 employees and engages in interstate commerce. Defendant may be served through its registered agent, CT Corporation System, 811, Dallas Avenue, Houston, Texas 77002.

**Jurisdiction**

1

4.     Jurisdiction is invoked pursuant to TCHRA, Title VII, Section 1981, and Rule 97(a) of the Texas Rules of Civil Procedure, and the right to sue notice ("RTS") by the U. S. Equal Employment Opportunity Commission ("EEOC") dated June 6, 2023. Everett filed this lawsuit within ninety (90) days of receipt of the RTS notice. All conditions prior to bringing this suit have been met.

5.     Compensatory and punitive damages are sought pursuant to TCHRA, Title VII, and Section 1981.

6.     Declaratory, injunctive, and equitable relief are sought pursuant to the TCHRA, Title VII, and Section 1981.

7.     Reasonable attorney's fees and costs may be awarded pursuant to TCHRA, Title VII, and Section 1981.

**Venue**

8.     This lawsuit lies in Gregg County, Texas because the facts arising in this lawsuit occurred in this county.

**Factual Statement**

9.     Everett was employed by Defendant on October 15, 2015, as a Visual Merchandiser. On March 1, 2022, she was terminated by Defendant. She was not told the reason that she was terminated on that date. The termination reasons Target offered TWC's Unemployment Office were false and were not given to Everett at the time of termination.

10.    During unemployment proceedings, Everett learned that Defendant stated that she had discussed Justin Tucker's ("Tucker") sexuality and threatened him. This is not true as she has never made a derogatory statement toward his sexual orientation or threatened him. Tucker is a

2

Black male. Initially, Everett thought that she and Tucker were casual friends as he had discussed personal issues with her. He also discussed his sex life around other store employees including Everett. Everett did not feel it was appropriate to discuss any person's sexual life at work notwithstanding sexual orientation, but she permitted it to keep the peace. However, she was uncomfortable hearing the details of any person's sex life in which she worked. Discussing his sexual life occurred frequently from 2020 to 2021, even when he became Everett's supervisor. Apparently, Everett was punished for reporting this type of behavior as Defendant has characterized her in a homophobic way. Everett is not homophobic.

11. As background, Chris Weaver ("Weaver"), Black-male and Store Manager, hired Tucker in or about 2020. Tucker was hired as Team Lead. Later, he applied for an executive position, which would be an employee next in line to be Store Manager. After the promotion, Tucker became Everett's supervisor. Weaver, knowing he was not qualified for the position, asked Everett to teach or train him everything she knew. Weaver had stated Everett was the teacher and trainer of many employees, and she was good at what she did. While she was not the individual to train or teach him with her current position of Visual Merchandiser, Everett went above and beyond in teaching Tucker. However, Tucker did not have the experience nor did he meet the tenure requirement of one year for the promotion.

12. During Everett's employment, Tucker had made the work environment hostile. In addition to talking openly about his sex life, he repeatedly called women "bitches" and said "they (females) made his asshole hurt." He listened to vulgar and profane music that demeaned women while others were around at work. On multiple occasions, Tucker and Amanda Rose (Caucasian female), a subordinate of his, got into cursing matches in front of many other employees. Rose

3

would be told to go home for the day but returned to work at her normally scheduled time. To her knowledge, Rose was not disciplined. Many employees witnessed these interactions, such as Lacy Hampton, JoAnn Cox, and Brittany (last name unknown). Everett has statements from witnesses who confirm the same. There were no consequences for Rose or Tucker's behavior. In addition, Tucker had flirted with a male vendor of Defendant. Everett told Weaver about these issues, but he acted like he did not care or know anything about it. Nothing changed.

13. In 2021, Everett reported these incidents to HR, and they did not do an investigation on any of the claims. Following this, she tried to eliminate all interaction with Tucker as much as possible. However, she still heard him refer to women as "bitches" on many occasions after reporting him. Thus, the sexual hostile work environment continued without investigation or disciplinary action.

14. It was apparent that Tucker had been told about Everett's complaint as he started to treat her negatively thereafter. Jenna Harrison (Caucasian female) from HR was present when Everett walked into Harrison's office and Tucker started harassing her about her job duties. Everett told Tucker the issue was out of her hands, but he continued to tell her what she needed to do. He continued to ask her to do something that she could not do and hollered at her while she, in turn, defended herself and naturally raised her voice so he could hear her side of what occurred. These facts can be confirmed by the camera. Everett told Weaver to check the camera to confirm what happened. He stated he was not going to do it. Later, in 2021, Everett discussed her issues again with HR, but nothing happened. After she had reported him, Tucker began speaking to everyone but Everett, letting her know that he knew she had reported him.

15. In or about January or February 2022, HR disclosed the names of the employees who had tested positive for Covid. As this was a HIPAA violation, Everett called the hotline about this incident and reported it. She had also spoken to Weaver about the violation, but he responded that it does not matter, and he did not address it. A day or so later, Weaver had told her to clock out and leave after an incident with Tucker. She was terminated on March 1, 2022. Tucker and Weaver had a very close relationship, and Everett believes that Weaver was tainted by Tucker's animus toward her. There were other incidents related to Tucker's harassment that were not included in the EEOC charge but Everett has recalled other events after filing her charge. Based on information and belief, Tucker was terminated for this type of sex-based harassment and abusive language and conduct on or about October 24, 2022.

16. Everett has never had any write-ups or disciplinary actions before being terminated. Defendant had a progressive disciplinary policy but did not follow it. To this day, she is unclear of the legitimate reason that she was terminated.

17. Tucker's actions were severe and pervasive as he repeatedly to referred women in derogatory terms as stated previously. He also turned-on music while at work for others to hear that demeaned women and referred to them as bitches and hoes. The harassment affected the terms and conditions of Everett's employment and his actions were noted as inappropriate by multiple employees. Moreover, no investigation or corrective action was taken to remedy the harassment after Defendant received notice of Tucker's harassment and abusive conduct. Everett is entitled to damages for the harm she experienced due to harassment.

18. Defendant's reasons for the termination are pretextual, manufactured to conceal retaliation and race and gender discrimination.

19. If Defendant had not discriminated and/or retaliated against Everett, she would have received her salary as well as other employment benefits.

20. Everett has no plain, adequate, or complete remedy at law to redress the wrongs experienced and is now suffering and will continue to suffer irreparable injury from the treatment by Defendant.

21. Everett suffered, is now suffering, and will continue to suffer emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary losses as a direct result of Defendant's discrimination.

22. Everett will suffer future pecuniary losses as a direct result of Defendant's discrimination and retaliation.

23. Defendant intentionally engaged in discrimination and retaliation against Everett with malice or reckless indifference to her rights under TCHRA, Title VII and Section 1981, as amended.

**Causes of Action**

24. Everett incorporates as if re-alleged herein paragraphs 1 through 23.

25. Because race and/or gender play a motivating factor in the decision to terminate Everett, Defendant willfully and maliciously violated the TCHRA, Title VII and Section 1981.

26. But for her engaging in protected activity by complaining about race discrimination, she would not have been terminated. Because her termination was also retaliatory, Defendant violated TCHRA, Title VII and Section 1981.

27. Because Defendant failed to investigate and correct the actions of Tucker and Weaver (in enabling Tucker's behavior), Defendant created a hostile work environment based on

gender that was not remedied in any way. In doing so, Defendant violated TCHRA, Title VII and Section 1981.

**Prayer for Relief**

28. Wherefore, Everett prays that this Court:

   a. declare the conduct engaged in by Defendant to be in violation of her rights;

   b. enjoin Defendant from engaging in such conduct;

   c. reinstate her to her position of Visual Merchandiser at the pay she was receiving at the time of termination plus any raises she would have received;

   d. in lieu of reinstatement order her front pay and benefits until retirement;

   e. order back pay;

   f. order compensatory and punitive damages;

   g. prejudgment and post-judgment interest;

   f. award her reasonable attorney's fees and costs; and

   g. grants such other non-monetary relief as it may deem just and proper.

**Jury Trial**

29. Everett demands a jury trial.

Respectfully submitted,

/s/ *Victoria L.Plante*
VICTORIA L. PLANTE
Texas Bar No. 00798436
PLANTE LAW FIRM, P.C.
5177 Richmond Avenue Suite 1140
Houston, Texas 77056
Telephone: (713) 526-2615
Facsimile: (713) 513-5176
Email: victoria@plantelawfirm.com

**ATTORNEY FOR PLAINTIFF
SHUNDA "RENAY" EVERETT**